# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

VALERIE FAIRRES and BRIAN FAIRRES,
husband and wife,

      Plaintiffs,

v.                                                                          No. 8-CV-1183 WJ/ACT

THOMAS BYRNE, M.D., DEMING HOSPITAL
CORPORATION d/b/a MIMBRES MEMORIAL
HOSPITAL, COMMUNITY HEALTH SYSTEMS,
INC., and COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES, INC.,

      Defendants.

### ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER MODIFYING CAPTION

THIS MATTER comes before the Court on Defendant Dr. Thomas Byrne's Motion for

Summary Judgment (Doc. 92).  Plaintiff Valerie Fairres[1] sued Dr. Byrne for medical negligence

after he injured her ureter during diagnostic laparoscopic surgery.  Specifically, Plaintiff Fairres

alleges three instances of medical negligence against Dr. Byrne—she claims he was negligent in

his preoperative care, during the operation itself and again in his post-operative care.  Defendant

Byrne argues that Fairres cannot meet her burden of proof and asks this Court to enter summary

judgment against Fairres on all three instances of medical negligence.  Furthermore, Defendant

asks this Court to dismiss several of Plaintiff's claims for damages because Plaintiff has

proffered no expert to testify that these damages are the result of Byrne's alleged negligence.

————————————

[1] Fairres' husband, Brian Fairres, is also a plaintiff in this suit.  For ease of readability,
however, the Court will refer only to Plaintiff Valerie Fairres in this opinion.

Finally, Defendant argues that Fairres cannot prove that punitive damages are warranted and asks this Court to enter summary judgment on Plaintiff's claim for punitive damages.  The Court GRANTS Defendant's motion in part and DENIES it in part, as herein discussed.

## BACKGROUND

Plaintiff Valerie Fairres has suffered from chronic abdominal and pelvic pain for many years.[2]  She has also undergone several abdominal surgeries, including a hysterectomy and two C-sections.  In February 2007, Doctor Taylor, a urologist, examined Fairres and tentatively diagnosed her with interstitial cystitis—a common cause of chronic pelvic pain.[3]  While there is no known cure for interstitial cystitis, doctors often treat it by recommending various treatments for pain relief, such as medication, dietary changes, bladder washings, nerve stimulants and the like.  *See* Dr. Johns Depo, Defendant's Exhibit 6, at 37.  Often doctors adopt a trial-and-error method—if one treatment does not work, they try another.  Dr. Taylor recommended a series of treatments using the drug DMSO but those treatments did not provide any pain relief to Fairres.  Because Fairres was complaining of constant pelvic pain as well as pain during intercourse, Dr. Taylor suspected the problem was outside the realm of urology and referred her to Defendant Dr. Byrne, a gynecologist.

Defendant Byrne first examined Fairres on July 10, 2007.  Defendant Byrne claims that

---

[2]  Fairres also apparently suffers from fibromyalgia, chronic obstructive pulmonary disease ("COPD"), irritable bowel syndrome, depression and hypertension.  *See* Fairres' Depo., Defendant's Exhibit 1, at 13-14, 89-90.

[3]  While it is not very well understood, medical research suggests that interstitial cystitis occurs when the cells on the inside wall of the bladder lose their lining, causing constant bladder irritation.  *See* Dr. Johns Depo., Defendant's Exhibit 6, at 19.

2

he learned, from a conversation in the hallway with Dr. Taylor[4], that Dr. Taylor had tentatively diagnosed her with interstitial cystitis but that the treatments he tried had not worked.  He also claims he reviewed her medical chart with Dr. Taylor in the hallway.  At the appointment on July 10th, Fairres told Byrne that she had previously been diagnosed with endometriosis (another condition which can cause abdominal and pelvic pain in its later stages), but Byrne did not have any documentation confirming that previous diagnosis.  After examining Fairres, Byrne adopted a working diagnosis of chronic interstitial cystitis.  His medical records reflect a preoperative diagnosis of "chronic pelvic pain, possible endometriosis and possible interstitial cystitis."  Byrne also believed that Fairres' pain could be caused by adhesions, or scar tissue, in her abdomen from her repeated surgeries.  He noted on her chart that he planned to request her previous medical records, but apparently he never did so.  On July 30, 2010, Byrne scheduled Fairres for a diagnostic laparoscopy.  His office note from Fairres' visit on July 31st states: "Patient was scheduled for a laparoscopy, possible fulguration of lesions[5] and cystoscopy."  Byrne's Depo, Defendant's Exhibit 5, at 58-59.

A diagnostic laparoscopy is a surgical procedure wherein the surgeon makes a small cut and inserts a tiny video camera (called a laparoscope) through the cut in order to view the inside of the patient's abdomen or pelvis.  This procedure can be used to detect endometriosis or adhesions, but is not helpful in detecting or treating interstitial cystitis.  *See* Byrne's Depo, Defendant's Exhibit 5, at 126.  Sometimes, the surgeon will insert additional instruments

---

[4] Apparently, Byrne and Dr. Taylor work in the same building.

[5] Byrne testified that he was intending to fulgurate (i.e. burn away using electrocautery) any endometriosis lesions that he might find.  Byrne's Depo, Defendant's Exhibit 5, at 73. However, because Byrne did not find any evidence of endometriosis during the surgery, he did not have to fulgurate any lesions.

through the incision in order to cut through adhesions that he encounters during the surgery.

On August 8, 2007, Byrne admitted Fairres to the operating room for the laparoscopy. During the surgery, Byrne used an electrocautery instrument to cauterize blood vessels and control bleeding when he cut through adhesions.  According to Byrne's operative report, Fairres "had adhesions from the descending colon from the left flank all the way down to the vagina. These were mostly filmy and I was able to . . . cut through the abdominal wall area staying just off the abdominal wall through for the most part avascular areas.  When there were small blood vessels, I cauterized them with bipolar cautery first."  Byrne also noted the presence of "dense adhesions between the colon and the bladder."  After the surgery, Byrne's adopted a post-operative diagnosis of "severe abdominal adhesions [and] probable interstitial cystitis."  Byrne discharged Fairres after the surgery.

Two days later, on August 10th, Fairres returned to the hospital complaining of dehydration, nausea and breathing difficulties.  A test performed on August 12th strongly suggested that the left ureter had been cut and that urine was leaking into Fairres' abdomen. Two days later, on August 14th, Byrne and Dr. Taylor performed another surgery to repair the uterer.  Fairres was finally discharged from the hospital on August 24, 2007.

## SUMMARY JUDGMENT

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Once that burden is met, the nonmoving party must put forth specific facts

showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

**ANALYSIS**

In order to establish a claim of medical negligence against Defendant Byrne, Plaintiff must show that: (1) Byrne owed a duty of care to the Plaintiff; (2) that Byrne breached that duty by departing from the appropriate standard of care; and (3) that Byrne's breach caused Plaintiff's injury. *Blauwkamp v. Univ. of New Mexico Hosp.*, 836 P.2d 1249, 1252 (N.M. Ct. App. 1992). In medical negligence actions, the elements are usually proven through expert testimony because the issues raised are often beyond the understanding of an ordinary lay person. *Alberts v. Schultz*, 975 P.2d 1279, 1284 (N.M. 1999).  Here, Plaintiff alleges that Byrne acted negligently in three different ways: (1) by failing to perform additional diagnostic workup before rushing Plaintiff to surgery; (2) by injuring her uterer in the course of the laparoscopic surgery; and (3) by failing to diagnose and treat the uterer injury promptly.  Byrne argues that Plaintiff cannot prove negligence at any of these points because Plaintiff lacks proof through expert testimony of either causation or breach.  The Court will address each of Plaintiff's three negligence claims in turn.

## I.      Failure to Conduct an Adequate Preoperative Evaluation

First, Plaintiff alleges that Byrne failed to conduct an adequate evaluation before rushing her to surgery.  Plaintiff's expert, Dr. Delbert Johns, testified that it is beneath the standard of care to perform laparoscopic surgery without first ruling out other potential causes of Fairres'

5

pelvic pain.  Dr. Johns testified that it is standard practice to try various pain-mitigating treatments for up to a year before attempting surgery—especially when a patient's pain complaints are consistent with a variety of conditions, none of which are treated surgically.  *See* Dr. Johns' Depo., Plaintiff's Exhibit 5, at 27 ("Chronic pelvic pain patients . . . require very thorough evaluation before any surgical intervention is entertained, because it is an extremely rare chronic pelvic pain patient whose pain is cured by surgery, extremely rare.").  Furthermore, Dr. Johns faults Byrne for scheduling Fairres for surgery before obtaining or reviewing any of her medical records.

In response, Byrne argues that Plaintiff's negligence claim must fail because Plaintiff has not presented any evidence of causation.  Specifically, Byrne argues that Plaintiff cannot show that the lack of an adequate preoperative evaluation (assuming such action constituted a breach of care[6]) caused any damages to Fairres.  In order to prove causation, Plaintiff must prove, to a reasonable degree of medical probability, that the alleged breach was the proximate cause of Plaintiff's injuries. *Alberts v. Schultz*, 975 P.2d 1279, 1286 (N.M. 1999).  New Mexico defines proximate cause this way: "A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred. It need not be the only cause, nor the last nor nearest cause. It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." *Id.*

Dr. Johns' testimony is slightly contradictory regarding causation.  He first testified, in his affidavit, that if Byrne had conducted the appropriate preoperative evaluation, then "Fairres

---

[6] Byrne admits that a genuine issue of fact exists about whether his preoperative evaluation of Fairres was below the standard of care.  *See* Reply, at 2.

would not have had the surgery, in which her uterer was injured, in the first place."  Affidavit of

Dr. Johns, Plaintiff's Exhibit 2, at ¶ 8.  In his deposition, however, Dr. Johns admitted that he

could not testify to a reasonable degree of medical certainty that additional preoperative

evaluation and treatment would have relieved Fairres' pelvic pain, making eventual surgery

unnecessary.  Dr. Johns' Depo, Defendant's Exhibit 6, at 57 ("Q: [I]s it also true that you can't

state to a reasonable degree of medical probability whether treatment for either [interstitial

cytosis], diverticulitis or [irritable bowel syndrome] would have made any difference for Mrs.

Fairres? A: That's correct.  I don't know the answer to that."); *see also id.* at 53.  In other words,

while Dr. Johns believes that Byrne should have conducted additional workup and treatment

before performing surgery on Fairres, Dr. Johns cannot testify that such treatment would have

worked or that Fairres would have avoided surgery.  Accordingly, Plaintiff has not presented the

kind of evidence of proximate cause that New Mexico requires.  Plaintiff cannot show, to a

reasonable degree of medical probability, that the surgery would not have occurred if Byrne had

conducted an appropriate preoperative evaluation.  Because Plaintiff has failed to put forth proof

of an essential element of her claim, this Court must grant summary judgment to Defendant

Byrne on this claim.

## II.    Injury to Uterer During Surgery

Next, Plaintiff alleges that Byrne was medically negligent when he cut her uterer during

surgery.  Defendant, on the other hand, disputes that he breached his duty of care when he cut

her uterer.  In order to determine whether Byrne in fact breached his duty of care, the Court must

first determine what the appropriate standard of care is for the lysis of adhesions.

In his operative report, Byrne describes two different types of adhesions (i.e. webs of scar

tissue between structures in the abdomen) that he encountered in Fairres' abdomen: filmy

7

adhesions and dense adhesions.  Both parties agree that filmy adhesions are thin sheets of tissue which usually do not contain any blood vessels.  Dense adhesions, on the other hand, are thicker and often contain blood vessels.  When a surgeon cuts through dense adhesions, he often must cauterize the blood vessels to coagulate the blood and prevent internal bleeding.  Because filmy adhesions usually do not contain blood vessels (or contain only very small ones), cauterization is usually not necessary.

For purposes of this motion, both parties agree that injuries to the uterer should never occur when the surgeon is cutting through filmy adhesions.  When only filmy adhesions are present, it is negligent for a surgeon to injure the uterer.  *See* Dr. Johns Dep., Defendant's Exhibit 6, at 87 ("[F]ilmy [adhesions] are not at all difficult to treat, and one should not [injure] the uterer in a situation where they're simply lysing filmy adhesions with appropriate care.  I can't think of a circumstance with filmy adhesions where it would be reasonable to [injure] the uterer.").  On the other hand, both parties agree that injuries to the uterer are more common when the surgeon has to cut through dense adhesions—primarily because the ureter can be hard to see in the presence of dense adhesions.  According to Dr. Johns, it is not below the standard of care to injure the uterer in the presence of dense adhesions.  *See id.*, at 90 ("Q: And if there were dense adhesions, is that below the standard of care to injure a uterer? A: If there were dense adhesions in the area where this occurred, I would say probably not.").

Given this standard of care, the issue of whether Byrne breached his duty of care by injuring Fairres' ureter boils down to a question of whether there were dense adhesions in the area where the ureter was cut.  Byrne testified that he has no independent recollection of the surgery and therefore cannot independently recall whether there were dense adhesions in the area.  *See* Byrne's Depo, Plaintiff's Exhibit 4, at 157.  Accordingly, both parties must depend

8

entirely on Byrne's operative note which he wrote shortly after the August 8th surgery.  The

relevant part of that note states:

> [Fairres] had adhesions from the descending colon from the left flank all the way
> down to the vagina.  These were mostly filmy and I was able to . . . cut through
> the abdominal wall area staying just off the abdominal wall through for the most
> part avascular areas.  When there were small blood vessels, I cauterized them
> with bipolar cautery first.  In doing this slowly I was able to eventually dissect
> down to the previous adnexal area on the left, but there were dense adhesions
> between the colon and the bladder and possibly the upper vagina . . . .  I was
> unable to dissect these because I was afraid it would cause harm or holes in the
> colon.  There are no other adhesions.

Byrne's Operative Note, Defendant's Exhibit 7, at 1.  Both Plaintiff and Defendant focus on

Byrne's description of the adhesions as "mostly filmy" and "for the most part avascular" (i.e.

without blood vessels).  Plaintiff argues that "mostly filmy" implies that all the adhesions were

filmy, while Defendant argues that "mostly filmy" implies that some dense adhesions were

present.

The Court believes summary judgment is not appropriate on this claim because there is a

question of fact about whether dense adhesions were present in the area where the ureter was cut.

Byrne's operative note describes the presence of both filmy and dense adhesions.  However, both

parties seem to agree that the dense adhesions he describes "between the colon and the bladder"

are far below the area where the ureter was cut.  *See* Dr. Johns Depo, Defendant's Exhibit 6, at

83 ("I assume that's the dense adhesions he was referring to, and those are down away from the

area where this was done.").  Therefore, a question of fact remains regarding Byrne's meaning

when he described the adhesions as "mostly filmy."  As the Court sees it, two possibilities exist.

First, Byrne could have meant that all the adhesions were filmy except for the dense adhesions

he encountered between the colon and bladder.  In that case, all the adhesions near the ureter

injury would have been filmy and Byrne would presumably be negligent for injuring the ureter.

9

On the other hand, Byrne may have meant to describe only the adhesions near the ureter as mostly filmy, implying that some were dense.  If dense adhesions were present near the ureter, then Byrne would not have breached the standard of care when he injured the ureter. Accordingly, the Court denies summary judgment to Defendant on this claim because a question of fact exists regarding whether dense adhesions were present near the ureter.

## III.   Failure to Promptly Diagnose and Treat Injury

Third, Plaintiff alleges that Byrne was medically negligent when he failed to promptly diagnose and treat her injured ureter.  Fairres returned to the hospital on August 10th, complaining of symptoms which should have suggested a ureter injury, but Byrne did not operate until four days later on August 14th.  For purposes of this Motion, Defendant Byrne concedes that it was a breach of care to delay the repair surgery.  However, he argues that summary judgment is appropriate because Plaintiff cannot show that the delay caused any damage or injury to Fairres.

The Court denies summary judgment to Defendant on this claim.  In his affidavit, Dr. Johns stated that "the delay in repairing the ureteral injury . . . caused additional delay to Mrs. Fairres in that the presence of urine in her abdomen created an ongoing inflammatory process which worsened with the passing of time."  Plaintiff's Exhibit 2, ¶ 20.  Defendant argues that the Court should not credit Dr. Johns' affidavit because it contradicts his deposition testimony.  At his deposition, Dr. Johns testified that urine leaking into the abdomen "causes all sorts of problems.  Pain and inflammation.  It's not good to have a belly full of urine.  And that went on til the surgery on, I guess, the 14th.  So the earlier you diagnose it, potentially, the less catastrophic the complications would be."  Dr. Johns' Depo, Defendant's Exhibit 6, at 86. Immediately following that answer, defense counsel asked Dr. Johns: "But in this particular

case, what specific damage did it cause to Mrs. Fairres?" *Id.* Dr. Johns answered: "I don't know

the answer to that." *Id.* The Court does not believe that Dr. Johns' testimony is contradictory.

Rather, while Dr. Johns cannot testify specifically that the delay caused further inflammation to

Fairres, he can testify generally that a delay in this type of surgery typically causes additional

pain and inflammation. His inability to testify specifically about Fairres is due to the fact that he

cannot know for certain how much inflammation existed in Fairres' abdomen in the days before

the repair surgery. Regardless, however, Plaintiff only needs to show causation to a reasonable

degree of medical probability. Dr. Johns' testimony that a delay of several days generally

worsens the patient's condition is sufficient to meet this standard. Additional portions of his

deposition testimony make this point clear:

> Q: Are you going to testify that it would have made any difference in her outcome
> had she been—had the repair been made on August 10th versus August 14th or
> August 11th versus August 14th?
>
> A: I think a reasonable physician would say that had this diagnosis been made on
> the 10th rather than the 14th, then her outcome could have been improved. And
> that's just common sense. Two days of urine in your belly is going to make
> things worse. . . . And two days could make a difference, and I will testify to that.
>
> Q: But in this case, did it make a difference?
>
> A: I don't know. I can't answer that. You have to look at each case, individually,
> and even then you can't say for certain, but even then, it doesn't take too much
> intelligence to come to that conclusion.
>
> Q: You just can't identify what that difference would be.
>
> A: Well, overall, I would expect her outcome to have been better. I'll put it that
> way.
>
> Q: In what way?
>
> A: Surgery—a second surgery could have been less complicated because the
> urine had been in the belly the less time. This inflammatory mass that was
> supposedly there for years, that couldn't have been there for years, would likely

have been less 48 hours before.  The entire surgical procedure could have been
simpler and easier, which would logically relate to a better recovery and less
likelihood of subsequent problems with the urinary tract.

*Id.* at 102-104.  This type of testimony is sufficient to show to a reasonable degree of medical

probability that the delay in Fairres' repair surgery caused additional inflammation and

complication.  Accordingly, the Court denies Defendant's request for summary judgment on this

claim.

## IV.     Damages for Various Symptoms

Defendant next asks this Court to dismiss several of Plaintiff's claims for damages.[7]

Specifically, Plaintiff alleges that the negligently performed surgery and consequent ureter injury

caused her to suffer from increased incontinence, urgency, nocturia (urinary frequency at night),

increased pain with sexual intercourse, and increased abdominal pain.  *See* Fairres' Depo,

Defendant's Exhibit 1, at 29-30.  Because Plaintiff has proffered no expert testimony to show

that the surgery or ureter injury caused these symptoms, the Court must dismiss these claims for

damages.  Expert testimony is required to prove that injuries of this nature are caused by an act

of negligence.  *See Rael v. F&S Co., Inc.*, 612 P.2d 1318, 1322-23 (N.M. Ct. App. 1979)

(holding that expert testimony is required to establish claims of subjective future pain and

suffering); *Woods v. Brumlop*, 377 P.2d 520, 523 (N.M. 1962) ("[T]he cause and effect of a

physical condition lies in a field of knowledge in which only a medical expert can give a

competent opinion.").  Plaintiff's own testimony about these symptoms is insufficient.  *Woods*,

377 P.2d at 523 ("Not having show a peculiar knowledge, the plaintiff's testimony as to the

cause of her [condition] was inadmissible.").  In addition, Fairres admitted that no healthcare

_____

[7] Plaintiff's counsel failed to respond to this claim for summary judgment, so the Court is
left without the benefit of Plaintiff's argument on this claim.

provider had told her that her increased urinary frequency was related to the surgery by Byrne. *See* Fairres' Depo, Defendant's Exhibit 1, at 36. Given the fact that Plaintiff has proffered no expert testimony suggesting that Plaintiff's symptoms are caused by Byrne's actions, the Court must grant summary judgment to Defendant on these claims. Plaintiff may continue to assert a claim of negligence against Byrne for the ureter injury, but Plaintiff may not allege that any of the above-listed damages resulted from that negligently performed surgery. The Court presumes that Plaintiff has suffered additional damages as a result of the ureter injury—damages for which Plaintiff has sufficient expert testimony or damages which do not require expert testimony.[8]

## V.   Punitive Damages

Finally, Defendant asks this Court to dismiss Plaintiff's claim for punitive damages. In addition to her negligence claims, Plaintiff alleges that Byrne's conduct was willful, wanton or reckless, thereby subjecting him to liability for punitive damages. *See* Complaint, at 3. In order to allege a claim for punitive damages, Plaintiff must show that Byrne possessed a "culpable mental state"—"mere negligence or inadvertence is not sufficient to support an award of punitive damages." *Clay v. Ferrellgas, Inc.*, 881 P.2d 11, 14 (N.M. 1994); *Gonzales v. Sansoy*, 703 P.2d 904, 907 (N.M. Ct. App. 1984). Here, Plaintiff has put forth no evidence that Byrne acted willfully, recklessly or wantonly. In fact, Plaintiff herself testified that she did not believe Byrne was intentionally trying to injure her ureter. Fairres' Depo, Defendant's Exhibit 1, at 54. Plaintiff's counsel notes that surgery is an inherently dangerous undertaking and argues that Byrne showed recklessness and a cavalier attitude in ineptly performing Fairres' surgery. Without any evidence that Byrne acted recklessly, however, Plaintiff cannot succeed on her

---

[8] Because the Plaintiff did not respond to this point in Defendant's Motion, the Court has no way of knowing whether, in fact, Plaintiff has any additional damages to assert.

claim for punitive damages.  Accordingly, the Court enters summary judgment in favor of Defendant Byrne on Plaintiff's claim for punitive damages.

## VI.    Order Modifying Caption

All of the defendants in this case except for Defendant Byrne have been dismissed by stipulation of the parties (Docs. 88 & 96).  Accordingly, the caption for this case is hereby modified to delete all of the defendants except for Defendant Byrne.  The parties are ordered to use the correct caption on all future filings.

### CONCLUSION

In conclusion, the Court grants Defendant Byrne's Motion for Summary Judgment in part and denies the Motion in part.  Specifically, the Court GRANTS summary judgment to Defendant: (1) on Plaintiff's negligence claim relating to Defendant's lack of adequate pre-operative care; (2) on Plaintiff's claim that she suffers from increased incontinence, urgency, nocturia (urinary frequency at night), increased pain with sexual intercourse, and increased abdominal pain as a result of the surgery and ureter injury; and (3) on Plaintiff's claim for punitive damages.  However, the Court DENIES summary judgment to Defendant on Plaintiff's negligence claims relating to the laparoscopic surgery and ureter injury as well as the delay in diagnosing and repairing the ureter injury.  Finally, the caption of this case shall be modified as ordered above.

**SO ORDERED.**

_____

UNITED STATES DISTRICT JUDGE

14